**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ROBERT M. NEWELL,　　　　　　　:

　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　Case No. 3:07cv00412
　vs.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　District Judge Walter Herbert Rice
MICHAEL J. ASTRUE,　　　　　　:　Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,　　　　:

　　　　Defendant.　　　　　　　:

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.　INTRODUCTION

　　　Plaintiff Robert M. Newell worked for twenty-six years as an assembler and quality assurance monitor. (Tr. 46, 109). He stopped working in December 1997 due to several medical problems. He thereafter sought financial assistance by applying for Disability Insurance Benefits (DIB) with the Social Security Administration.

　　　As will be detailed below, *infra*, §II, the Social Security Administration has determined that beginning on May 13, 2003 Plaintiff was under a "disability" within the meaning of the Social Security Act. (Tr. 408). Yet the Social Security Administration has also determined that Plaintiff was not under a "disability" between his claimed disability onset date of December 21, 1997 and May 13, 2003. *Id.* Plaintiff brings this present case challenging the Social Security Administration's nondisability determination.

　　　This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.

Plaintiff seeks an Order remanding, at a minimum, this matter to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.      PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's DIB application initially and upon reconsideration. Plaintiff was then provided a hearing, in May 2000, before Administrative Law Judge (ALJ) Melvin A. Padilla. (Tr. 38-70). After the hearing, ALJ Padilla issued a written decision concluding that Plaintiff was not under a disability and therefore not eligible to receive DIB. (Tr. 14-31). The Appeals Council of the Social Security Administration denied further review. Plaintiff then sought judicial review of the ALJ's decision by filing a case in this Court.

Upon the Commissioner's Motion, this Court remanded the case to the Social Security Administration for further proceedings. (Tr. 454-59). On remand, the Appeals Council returned the matter to the ALJ, instructing as follows:

> Dr. John Cowden, DPM, the claimant's treating podiatrist rendered an opinion that, due to the claimant's functional limitations, he was unable to perform his former job or any other job. The ALJ stated in his decision that he did not give controlling weight to Dr. Cowden's opinion because podiatrists are not considerable [sic] accepted medical sources under 20 CFR 404.1513. However, on July 2, 2000, five and a half months before the ALJ issued his decision, 20 CFR 404.1513 was modified to include subsection (4) which notes that licensed podiatrists are now considered acceptable medical sources. Thus, the ALJ's stated reason for rejecting Dr. Cowden's opinion lacked legal support. Upon remand, the ALJ shall fully consider and address the opinion of Dr. Cowden regarding the claimant's functional abilities and limitations. The ALJ shall also further develop and update the medical record.

(Tr. 460-61).

On remand, ALJ Padilla held a second administrative hearing and later, in June 2004, issued a second written decision, which was partially favorable to Plaintiff. (Tr. 784-801). ALJ Padilla concluded in his second decision that Plaintiff was under a disability beginning on May 13, 2003, but not before. *Id.* He noted in part, "Updated medical records admitted since the date of the initial decision in this case ... do not document any disabling medical condition prior to May 13, 2003, when the claimant underwent surgery on his right foot resulting in the ultimate loss of mobility...." (Tr. 793).

Plaintiff then sought judicial review of the unfavorable part of ALJ Padilla's decision. His case was remanded once it was determined that the hearing cassette tape had been lost. (Tr. 802).

On remand, the case was assigned to ALJ Thomas R. McNichols, II, who held another hearing. (Tr. 416-53). ALJ McNichols issued a decision in August 2007. He did not disturb the prior administrative finding (by ALJ Padilla) that Plaintiff was under a disability beginning on May 13, 2003, and ALJ McNichols similarly concluded that Plaintiff had not been under a disability between his claimed disability onset date of December 21, 1997 and May 13, 2003. (Tr. 396-408).

ALJ McNichols' decision became the Social Security Administration's final decision, which Plaintiff currently challenges in the present case. This Court has jurisdiction to consider Plaintiff's challenges to such final decisions. *See* 42 U.S.C. §405(g).

## III. FACTUAL BACKGROUND

Plaintiff's age during the time period at issue in the ALJ's decision – December 21, 1997 to May 13, 2003 – placed him in the category of a "younger person," i.e., a person under age fifty. *See* 20 C.F.R. §404.1563(c); s*ee also* Tr. 405. Plaintiff has a high school education. (Tr. 405).

Plaintiff testified during his first administrative hearing (May 2000) that he could

not work because he had problems losing his balance. He used crutches or a walker, and it was difficult for him to get around. (Tr. 46). He testified that the longest he could walk was fifteen feet due to pain in his ankles and feet. (Tr. 47). He could stand for about ten minutes due to the same problems with pain. *Id*. He explained that three weeks earlier he had undergone surgery on his right ankle. *Id*. at 47-48. Two months before that he had undergone surgery on his left ankle. *Id*.

Plaintiff further testified during the May 2000 hearing that he could sit for about two hours before needing to move around. (Tr. 47). He estimated that he could lift about fifteen pounds, although he had not done any lifting or anything strenuous in three years. (Tr. 58). His daily activities were few, only cooking and very seldom washing the dishes. (Tr. 58-59). He would grocery shop but used a motorized shopping cart rather than walking around the store. (Tr. 61-62). He drove a car only three times per month and used the cruise control because of numbness in his feet. (Tr. 42, 46-47).

During the administrative hearing in June 2007, Plaintiff testified that by January 1998 he had stopped driving completely. (Tr. 422). He explained that he became disabled on, and last worked on, December 21, 1997, because he was losing his balance a lot and was having problems with poor circulation. (Tr. 423-24). Before 2003 Plaintiff had to use a walker, cane, or crutches. (Tr. 427-28). He estimated his daily pain level during that period as an "eight" on a scale of zero (no pain) to ten (worst pain imaginable). (Tr. 433). The pain would shoot up his legs. He was most comfortable lying on his back, although he did not sleep well an night. *Id*. His condition became worse during the six-year period at issue (December 21, 2007 to May 13, 2003). *Id*.

Turning to the other evidence in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #9 at 3-10; Doc. #11 at 2-9. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Yet a brief description of the most significant medical opinions upon will help frame

further review.

In August 1998 Dr. Forester, a consulting neurologist, noted that her sensory examination of Plaintiff revealed "diminished temperature, pinprick and vibratory sense in his lower extremities distally in a graded stocking distribution." (Tr. 179). Cerebellar testing showed that Plaintiff's gait was mildly ataxic.[2] *Id*. Dr. Forester noted, "Motor examination reveals gait and station to be normal." *Id*. Dr. Forester further noted that Plaintiff's muscle bulk was significantly diminished in the lower extremities with atrophy in several muscle groups bilaterally. *Id*. Plaintiff's Achilles' reflex was absent. (Tr. 180). Dr. Forester suspected peripheral neuropathy (with unclear etiology).[3] *Id*. She recommended further testing. *Id*.

In March 1999 Dr. Danopulos examined Plaintiff at the request of the Ohio Bureau of Disability Determinations. (Tr. 250-59). Dr. Danopulos performed, in part, a musculoskeletal examination, which "revealed an unsteady gait helped with a walker. Spine was painful to pressure.... Toe and heal gait was normal. There was no evidence of nerve root compression or peripheral neuropathy." (Tr. 254). Dr. Danopulos understood that Plaintiff's past neurological exam in August 2008 (by Dr. Forester) had "revealed some sensory loss in both feet and mildly ataxic gait." (Tr. 255). Dr. Danopulos concluded, "The objective findings were 1) alcoholic neuropathy with unsteady gait but normal deep tendon reflexes, 2) bilateral feet pain partly due to previous podiatric surgeries and partly due to alcoholic neuropathy." (Tr. 255). Dr. Danopulos also opined, "His ability to do any work related activities is restricted from his alcoholic neuropathy which triggers unsteady and ataxic gait." (Tr. 255).

_____

[2] The adjective "ataxic" generally describes a condition of defective muscular coordination. *See* Taber's Cyclopedic Medical Dictionary at 182 (19th Ed. 2001)

[3] Peripheral neuropathy is "[a]ny syndrome in which muscle weakness, paresthesias, impaired reflexes, and autonomic symptoms in the hand and feet are common. This syndrome occurs in patients with diabetes mellitus, renal or hepatic failure, alcoholism, or in persons who take certain medications...." Taber's Cyclopedic Medical Dictionary at 1387.

Also in March 1999 Dr. Congbalay reviewed the record and concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, sit for 6 hours in an 8-hour workday, stand/walk for 2 hours in an 8-hour workday, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. (Tr. 268-69). Dr. Congbalay concluded that Plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 269). The record reviewed by Dr. Congbalay did not contain a treating medical source statement regarding Plaintiff's physical capacities. (Tr. 273). In June 1999, another record reviewer, Dr. Caldwell, stamped her agreement with Dr. Congbalay's opinions. (Tr. 274). Dr. Caldwell did not explain her reasons for agreeing with Dr. Congbalay's opinions. *See id*.

In November 1999 Plaintiff's treating physician Dr. Pelfrey-Grant (Dr. Pelfrey) completed a form indicating that Plaintiff could stand/walk ½ per day; could sit 2½-4 hours per day; could alternately sit or stand with the opportunity to change positions 4½-6 hours per day; could occasionally lift up to 20 pounds; and could not perform sedentary work. (Tr. 320-21). Dr. Pelfrey explained, "Due to equilibrium problems [Plaintiff] has problems moving even when his knees and ankles are less painful. The combination of his knees, ankles, hips, and equilibrium problems makes him unable to do anything for a sustained period of time." (Tr. 321).

A few days later, Plaintiff's treating podiatrist Dr. Cowden reported, "Robert Newell does have Peripheral Neuropathy and we have very good evidence for this. There is the testing by Dr. Herman and there is an EMG which was done at Miami Valley Hospital. It is my experience and opinion that he has severe medical impairment due to the degree of Peripheral Neuropathy." (Tr. 342). Dr. Cowden opined that Plaintiff could not perform any standing activities such as his former job. *Id*. Dr. Cowden further wrote:

> The type of Peripheral Neuropathy that Robert has is evidence of a persistent disorganization of the motor function in both the lower extremities. This degree of insensitivity is impossible to fake. His problem does cause sustained disturbance of gross and ... [illegible] movements of gait. The significance of Peripheral Neuropathy is that he will have

persistent foot and toe infections because he cannot feel the ground or any insult to the foot. The normal pain reflex is not present....

(Tr. 342). Dr. Cowden concluded, "I think there is no question that this is a permanent medical disability. I believe that in the future the disability will grow more severe." (Tr. 343).

In January 2000 Plaintiff's treating neurologist, Dr. Valle, reported his "impressions were of a diffuse neuropathy in sensory ataxia." (Tr. 380). In answers to interrogatories, Dr.Valle opined that Plaintiff had peripheral neuropathy with disorganization of motor function; he had significant and persistent disorganization of motor function in his two extremities; his disorganization of motor functioning result in a sustained disturbance of his gross and dexterous movements in his lower extremities. (Tr. 381). Dr. Valle opined that Plaintiff was not able to complete a normal work day and workweek without interruption from physically based symptoms and could not perform at a consistent pace without an unreasonable number and length of rests. (Tr. 381).

## IV. ADMINISTRATIVE REVIEW

### A. "Disability" Defined And The ALJ's Sequential Evaluation

The term "disability" as defined by the Social Security Act carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2)from engaging in "substantial gainful activity" that is available in the regional or national economies.[4] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although

---

[4] Impairments must also be either expected to cause death or last at least twelve months. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B.  ALJ McNichols' Decision

As mentioned previously, ALJ McNichols adopted the prior administrative decision finding Plaintiff to be under a disability beginning on May 13, 2003. ALJ McNichols explained, "The claimant has undergone multiple foot surgeries and eventually became disabled beginning May 13, 2003, as a result of the 'triple-arthrodesis' and other surgical procedures he underwent on that date." (Tr. 403)(citing Exhibit 59F). ALJ McNichols thus focused his analysis on whether Plaintiff was under a disability between December 21, 1997 and May 13, 2003. (Tr. 397, 402-08).

The ALJ determined at Step 1 of the sequential evaluation that Plaintiff had not engaged in any substantial gainful activity at any relevant time. (Tr. 406).

At Step 2 the ALJ found that Plaintiff had the severe impairments of "a history of chronic alcohol abuse associated with alcoholic neuropathy and residuals of bilateral

tarsal tunnel release surgery." (Tr. 406).

The ALJ determined at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of an impairment in the Listings between December 21, 1997 and May 13, 2003. (Tr. 406).

At Step 4 the ALJ assessed Plaintiff' Residual Functional Capacity as follows:

> Between December 21, 1997, and May 13, 2003, the claimant was restricted to performing the basic exertional requirements of sedentary-level work.[5] However, it was necessary for the claimant to alternate periods of sitting and standing at 15-minute intervals, and he was restricted to standing and/or walking for a total of two hours per day. The claimant was also restricted to only occasional crawling, crouching, stooping, and bending ad was precluded from working on uneven surfaces, repetitively operating foot controls, climbing ladders, ropes, or scaffolds, or otherwise working around hazards.

(Tr. 407)(footnote added). The ALJ further determined at Step 4 that Plaintiff could not perform his past relevant work as an assemble or quality assurance monitor. (Tr. 407).

The ALJ's assessment of Plaintiff's residual functional capacity, along with the ALJ's findings throughout his sequential evaluation, led him ultimately to conclude that Plaintiff was not under a disability and hence not eligible for DIB. (Tr. 396-408).

## V.   JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389,401 (1977)). It consists of "more than a scintilla of evidence but less than a

---

[5]   Under the Regulations, those able to perform sedentary work are in the least strenuous category of work ability. *See* 20 C.F.R. §404.1567(a)-(e). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." §404.1567(a).

preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors).

Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## VI.    ANALYSIS

### A.    The Parties' Contentions

Plaintiff contends that the ALJ erred at Step 3 of the sequential evaluation by not finding that Plaintiff's condition met or equaled Listing 11.14 for peripheral neuropathy.

(Doc. #9 at 11-13).  Plaintiff maintains that the ALJ's analysis "was flawed by his misreading of the record and his failure to properly evaluate the opinions of the treating physician."  (Doc. #9 at 13).

Plaintiff further contends that the ALJ erred at Steps 3 and 4 of his sequential evaluation in his rejection of the opinions of his treating physicians, Drs. Valle, Cowden, and Pelfrey.  Plaintiff lastly argues that the ALJ erred in his analysis of Plaintiff's pain.

The Commissioner contends that (1) Plaintiff's impairments did not meet or equal Listing 11.14 for peripheral neuropathy; (2) the ALJ appropriately considered the treating physician opinions; and (3) the ALJ reasonably rejected Plaintiff's pain testimony as not fully credible.

### B.     Medical Source Opinions and The ALJ's Decision at Step 3

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source.  *See* 20 C.F.R. §404.1527(d).  The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  20 C.F.R. §404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).  When these requirements are not met, the treating physician rule does not apply.  *Id*.

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun.  The ALJ must continue to evaluate the treating source's opinion under several remaining factors described by the Regulations, including "supportability," "consistency," "specialization," and "other factors" brought to the ALJ's attention.  20 C.F.R. §404.1527(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions

under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §404.1527(d), (f).

The ALJ's decision in the present case did not separately describe or cite the Regulations applicable to evaluating the opinions of treating physicians and other medical sources. While the Regulations do not specifically mandate ALJs to separately describe the legal criteria applicable to weighing medical source opinions, the ALJ's omission of a separate description, or at a minimum, a citation to the applicable Regulations, requires the Court to scrutinize the ALJ's decision to determine whether he "applied the correct legal criteria." *Bowen*, 478 F.3d at 745-46. Doing so reveals that the ALJ did not weigh the opinions of Plaintiff's treating physicians under the correct legal standards.

The ALJ rejected Dr. Pelfrey's opinion as follows: "Dr. Pelfrey's assessment that Plaintiff's mobility was seriously diminished to the point where he could not perform full-time work prior to May 13, 2003, is still not well-supported by the record." (Tr. 403). The ALJ noted, "The claimant did not require any significant foot surgery prior to Dr. Pelfrey's November 1999 assessment nor is there anything in the record to suggest that he had begun experiencing any of the degenerative changes in his right lower extremity," which led to the finding of disability beginning on May 13, 2003. (Tr. 403). The ALJ viewed Dr. Pelfrey's opinions as suggesting that Plaintiff was partially "bedfast," and that the limitations set by Dr. Pelfrey were inconsistent with "demonstrated level of functioning or any electrodiagnostic or other objective evidence which would justify precluding him from full-time work activity." (Tr. 403). Lastly, the ALJ found that Dr. Pelfrey based her opinions entirely upon Plaintiff's subjective statements. (Tr. 403-04).

The ALJ's rejection of Dr. Pelfrey's opinions fails to indicate that he considered this treating physician's opinions along the two lines required by the Regulations: the first line requiring the ALJ to consider the treating physician rule under the standards in 20 C.F.R. §404.1527(d)(2); the second line requiring the ALJ to consider the remaining factors under §404.1527(d)(2)-(6). Rather than weighing Dr. Pelfrey's opinions in this

manner, the ALJ essentially combined the required two lines of inquiry into one by emphasizing the lack of objective medical evidence without considering whether, for example, Dr. Pelfrey's opinions was supported by any explanation or was consistent with other evidence of record. *See* Tr. 403-04.

It is tempting to overlook this error, since the ALJ reiterated one factor applicable under the treating physician rule, and since doing so would simplify administrative review of treating physicians' opinions as well as simplifying subsequent judicial review. Yet the Commissioner's require legal criteria, mandated by the Regulations, demands more through both its two-line weighing and the instruction to ALJs to provide good reasons for rejecting a treating physician's opinions. *See* §404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. At the United States Court of Appeals for the Sixth Circuit has explained, once an ALJ finds that a treating physician's opinion is not due controlling weight under §404.1527(d)(2) (the treating physician rule), "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status not withstanding." *Rogers*, 486 F.3d at 242 (also quoting parenthetically Ruling 96-2p, "In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").

In addition, the ALJ erred in a similar manner when rejecting the findings and opinions of Plaintiff's treating neurologists, Drs. Forester and Valle, and his treating podiatrist Dr. Cowden. *See* Tr. 402-04. The ALJ's decision does not contain a sufficient explanation that he considered the opinions of these treating specialists along the two-lines mandate by the Regulations. The ALJ, moreover, accepted the opinions of two non-treating physicians, Drs. Congbalay and Danopulos, without evaluating them under the factors required by the Regulations. This constituted further error because the Regulations require ALJs to evaluate the opinions of non-treating medical sources under the same factors applicable to treating medical sources – supportability, consistency,

specialization, *etc*. *See* 20 C.F.R. §404.1527(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). Nothing in the Regulations permitted the ALJ to use one set of unweighed, non-treating medical source opinions as the basis for rejecting the opinions of Plaintiff's treating specialists without first considering the factors set forth in §404.1527(d)(3)-(6). Indeed, as the Commissioner has explained through Ruling 96-6p, "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians ... who do not have a treating relationship with the individual are weighed by stricter standards, based to a degree on the medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *2.

The analysis turns next to Plaintiff's contention that the ALJ erred by concluding that his peripheral neuropathy did not meet or equal the criterial in Listing 11.14, which provides. This contention lacks merit.

To satisfy his burden at Step 3, Plaintiff must show that his peripheral neuropathy meets all of the specified Listing criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. Similarly, to show that he equals a listed impairment, Plaintiff must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531. It is not enough for Plaintiff to show that the overall functional impact of his impairment was as severe as that of a listed

impairment.  *See Zebley*, 493 U.S. at 351.

Given the potentially dispositive nature of the Listings, Plaintiff had much to prove at Step 3.  The Supreme Court explains:

> The Secretary [now, the Commissioner] has set the medical criteria defining the listed impairments at a higher level than the statutory standard. The listings define impairments that would prevent an adult regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'...  The reason for this difference between the listings' level of severity and the statutory standard is that ... the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.  That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Zebley*, 493 U.S. at 532 (internal citations omitted).

Although Plaintiff has shown that the ALJ erred in his evaluation of Dr. Valle's opinions, substantial evidence supports the ALJ's Step 3 findings.  Despite the fact that Plaintiff was examined numerous times during the six-year period in question, the record contains only two examination findings that found gait "abnormalities."   In August 1998 Dr. Forrester reported that upon examination, Plaintiff's gait was "mildly ataxic" but he still retained "normal gait and station." (Tr. 179).  And Dr. Valle reported in March 1999 that Plaintiff had ataxic gait, but he did not comment on whether Plaintiff's gait was, or was not, within normal limits.  The ALJ reasonably concluded at Step 3 that these minimal findings failed to demonstrate that Plaintiff had significant and persistent disorganization of motor function that resulted in a sustained disturbance of gait and station, as required under Listing 11.14.  *See* Tr. 402.  In his challenge to the ALJ's Step 3 findings, Plaintiff focuses on evidence showing his decreased sensation, strength, and reflexes.  (Doc. #9 at 11-12).  Yet Listing 11.14 does not address or require such findings. Instead, this Listing focuses on significant and persistent disorganization of motor function that results in a sustained disturbance of gait and station.  Because Plaintiff's

examination findings did not result in findings sufficient to meet or equal these Listing requirements, he has not shown error in the ALJ's decision at Step 3.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions of record are well taken, although his challenges to the ALJ's decision at Step 3 lack merit.[6]

## VII.   REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability between December 21, 1997 and May 13, 2003 is not overwhelming, and because the evidence of a disability during that period is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  This is so because the record essentially contains an unresolved battle between the opinions of Plaintiff's treating physicians (Drs. Pelfrey, Valle, and Cowden) and those of non-treating physicians (Drs. Danopulos and Congbalay).

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth

---

[6]   Because of these conclusions, and the resulting need to remand this case for further administrative proceedings, an in-depth analysis of Plaintiff's remaining challenges to the ALJ's decision is unwarranted.

above. On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible to receive DIB between December 21, 1997 and May 23, 2003.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Robert M. Newell was under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.    The case be terminated on the docket of this Court.

February 19, 2009

                               s/Sharon L. Ovington
                                 Sharon L. Ovington
                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).